KLEINFELD, J.,
dissenting:
I respectfully dissent.
For all mental and physical impairments we recognize that the symptoms a patient reports can be exaggerated or false, and give substantial deference to the ALJ’s decision of whether to credit them as true. See Soc. Sec. Ruling 96-7p; Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996). A diagnosis of fibromyalgia cannot automatically be beyond challenge. A fibro-myalgia diagnosis is based entirely on the patient’s subjective reports of pain. See Am. Coll, of Rheumatology, Fibromyalgia Diagnostic Criteria, http://www.nfra.net/ Diagnost.htm. The opinions of Nazzal’s examining physicians relied upon what Naz-zal told them. Though such reliance is quite proper for physicians whose task is to heal, the patient’s claims cannot be conclusive for those whose task is to determine who must pay. That physicians are specialists in rheumatology does not make them specialists in assessing credibility; their medical opinions can be no better than the data provided to them by their patient. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008). The ALJ gave specific and legitimate reasons for finding Nazzal not credible, and her lack of credibility necessarily undermines them diagnosis. See Morgan v. Comm’r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.1999); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir.1989).
The ALJ found Nazzal’s subjective complaints of severe pain not credible based on her daily activities, and her failure to attend physical therapy or take the medications prescribed to her. These are specific and legitimate reasons. See Soc. Sec. Ruling 96-7p; see also Andrews v. Shala-la, 53 F.3d 1035, 1043 (9th Cir.1995). Substantial evidence supports the ALJ’s conclusion that Nazzal’s reported levels of pain — an 8 or 9 out of 10, bedridden much of the time, — is inconsistent with cooking large family meals, doing housework, helping her children with homework, going to church, shopping, and taking walks, which she did. When a disease produces no objective evidence, diagnosis depends on the patient’s symptom reports, and where secondary gain is likely, daily activities are an especially useful indicator. See Soc. Sec. Ruling 96 — 7p; Smolen, 80 F.3d at 1284 & n. 7; Fair, 885 F.2d at 603-04; see also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991) (en banc). Nazzal’s failure to seek treatment or even a diagnosis for years — until she filed a worker’s compensation claim — is inconsistent with experiencing the highest levels of pain imaginable. See Tommasetti, 533 F.3d at 1039-40; see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir.1999); Flaten v. Sec’y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir.1995). Even when she was finally diagnosed, Dr. Bluestone did not agree that her self-reported limitations would prevent her from working. He opined that Nazzal could work part-time, and could work full-time in six months.
*594 Because the ALJ did provide clear and convincing reasons for rejecting Nazzal’s testimony and the examining physicians’ opinions, I would affirm.